**Affirmed as Modified and Opinion Filed August 4, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**Nos. 05-22-00406-CR, 05-22-00407-CR, 05-22-00408-CR, 05-22-00409-CR, 05-22-00410-CR, 05-22-00411-CR**

**SALVADOR VAZQUEZ CISNEROS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1312685-X, F-1312681-X, F-1312684-X, F-1312686-X, F-1312682-X, F-1312687-X**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Partida-Kipness

In five issues, appellant Salvador Vasquez Cisneros challenges his convictions for five counts of aggravated sexual assault of a child and one count of indecency with a child by contact. Cisneros argues: (1) the verdict contains a fatal variance; (2) the trial court erred by refusing his request for a lesser included offense; (3) the evidence was insufficient to support three of the aggravated sexual assault convictions; (4) the trial court erred in denying his motion for new trial; and (5) the

judgments require reformation. The State filed a cross-appeal and asks for additional reformations to the judgments. We affirm as modified.

## BACKGROUND

Cisneros was indicted for three counts of aggravated sexual assault of a child where JJ1[1] was the complaining witness, two counts of aggravated sexual assault of a child where JJ2 was the complaining witness, and one count of indecency with a child by contact where JJ2 was the complaining witness. *See* TEX. PENAL CODE §§ 22.021(a)(2)(B), 21.11(a)(1).

JJ1, JJ2, and their older sister, JJ3, primarily lived with their mother, D.L. From July 2012 to June 2013, D.L. and the children shared a home with B.R. and her five children.[2] Cisneros was the father to four of B.R.'s children. In April 2013, after giving birth to her fifth child, B.R. was diagnosed with lupus and suffered health complications. Cisneros moved into the house with B.R., D.L., and the children to help care for B.R.'s children. In June 2013, Cisneros rented an apartment for B.R. and her children and they moved out of the shared home.

At trial, D.L. stated she had known Cisneros for a long time and trusted him to watch her children. Cisneros mainly watched the children during the summer

---

[1] The complaining witnesses were given pseudonyms at trial to protect their identity. The indictments contained the same initials for both complainants, JJ. To clarify their identities, the trial court identified the complaining witnesses as JJ1 and JJ2, based on their ages. JJ1 and JJ2 are twins. JJ1 was one minute older. To protect the identity of the minor complainants and their family, we will use the same pseudonyms used during trial. *See* TEX. R. APP. P. 9.8(b)(2).

[2] D.L.'s children spent certain weekends and the month of July with their father, C.J.

break, while D.L. was at work. In July 2013, both JJ1 and JJ2 made an outcry to their older sister, JJ3, and then disclosed the abuse to their father, C.J.

JJ3 testified after the twins told her about their abuse, she went and told their father, C.J. The twins were upset and crying when they spoke about what had occurred to them. JJ3 explained they knew Cisneros as Chavia, his nickname, and when he moved in, he slept in the living room which was converted into a bedroom with B.R.

C.J. stated his girls came to stay with him during July 2013. His daughters came to tell him what had occurred late one evening. JJ2 had told her father "Chavia had put his hand in her pants and touched her and that it hurt." He said JJ2 was "crying, afraid, hurt, confused" when she was telling him about the abuse. C.J. called D.L. early the next morning to tell her what the twins had said and told her "they needed to be checked out." C.J. told D.L. to go and make a report of the incident with the police.

After the twins' father called her, D.L. stated the twins appeared afraid and were crying as they told her about the abuse. JJ1 told her mother the abuse had happened at the house in the garage, the garage closet, and in a van owned by B.R. D.L. understood the abuse occurred at a time when B.R. was already living at the apartment. She explained B.R. and Cisneros began living in the apartment at the beginning of June but continued to move their belongings out throughout the month.

Dr. Kristin Reeder, a child abuse pediatrician with the REACH Clinic, performed exams on JJ1 and JJ2 on July 29, 2013. She explained the girls had been referred to their clinic by one of their partner emergency rooms on July 26, 2013. Dr. Reeder found exams of both JJ1 and JJ2 to be what she considers "normal," but stated a normal finding does not discredit their account of abuse.

Dallas Child Advocacy Center forensic interviewer Nakisha Biglow conducted forensic interviews of the twins on July 31, 2013. She explained to the jury what occurs during a forensic interview and the process she used. Biglow also spoke about what constituted a delayed outcry and stated it was common to have delayed outcries in abuse cases. She stated the girls were both comfortable discussing the abuse which occurred and she did not see anything she considered to be a "red flag" during their interviews.

JJ1 testified her family lived with B.R.'s family during fourth grade. Cisneros lived with them in 2013, and JJ1 stated the abuse happened multiple times in June of that year. JJ1 said the abuse occurred most often in the garage closet. Cisneros would ask her to help him move "stuff" in the garage to get her to come in the garage with him. She explained he would touch her under and over her clothes. JJ1 also stated sometimes he would have to remain standing and other times he would pick her up and place her on top of storage containers in the garage. She said Cisneros penetrated her vagina with his fingers and would move his fingers around. JJ1 explained Cisneros would "touch her lines and her hole" and he "went into her hole."

Cisneros would tell JJ1 in Spanish not to tell anyone and if she told him no, he would get more rough with her. JJ1 remembered at least three incidents in the garage closet and another time in B.R.'s bedroom. She said each time she remembers him penetrating her with his fingers, and believed it was more than one finger. JJ1 recalled a third incident which happened in B.R.'s van. Cisneros was taking her with him to Home Depot in the van. She stated he climbed into the back seat of the van with her, pulled down her shorts, and penetrated her with his fingers. When Cisneros finished, he took JJ1 to Home Depot with him, bought her a candy bar, and told her not to tell anyone. JJ1 testified she would cry after these encounters with Cisneros, but not where anyone would see her. She saw Cisneros as an "uncle" and trusted being with him before this abuse occurred. Afterwards, she felt "scared and nervous" with him.

JJ2 testified she and her sister knew Cisneros because he dated B.R. In the beginning, Cisneros was really nice to her but towards the end of being around, he "got scary." JJ2 explained Cisneros touched her inappropriately in her "private parts a lot" and told her not to tell or "he'd do more and go for her sister." She stated the abuse occurred during the summer between fourth and fifth grade. It normally happened in the garage, garage closet, and sometimes in the living room. JJ2 said when Cisneros abused her in the garage, he would call her into the garage, lay her down on a storage container, pull down her pants and underwear, and touch her vagina with his hands. She said he would touch the sides, clitoris, and play with "her

holes," but would not "go in" to "her holes." JJ2 said Cisneros was rough and used a lot of pressure. She believed the instance of abuse would continue for "probably like ten minutes" and then Cisneros would stop and act like nothing happened. When the abuse was in the living room, Cisneros would put her on the bed, pull down her pants and underwear, and touch her. At the end, Cisneros would tell JJ2 not to tell anyone. She said she would cry and tell him to stop, but he ignored her. JJ2 noticed Cisneros's breathing would "get heavy" when he abused her. JJ2 said all the incidents happened in the same month and would happen when they were mainly alone in the house or no adults were there. JJ2 believed Cisneros never went "in her hole or past her line." However, Dr. Reeder testified based on JJ2's anatomy, if JJ2's clitoris was touched, it was unlikely to occur without breaking the plane of her labia majora.

As the trial court prepared the jury charge, Cisneros requested the lesser included offense of indecency with a child by contact in all of the aggravated sexual assault cases. The trial court granted Cisneros's request as to JJ2, but not for JJ1. Cisneros objected to the denial of the lesser included offense for JJ1, but his objection was overruled.

When reading the charge to the jury, the trial court explained which charge applied to which complainant. The judge identified the older twin as JJ1 and the younger twin as JJ2 in the jury charges. The jury convicted Cisneros of all six counts. Cisneros was sentenced to ninety-nine years' imprisonment in all five of the

aggravated sexual assault cases and twenty years' imprisonment in the indecency with a child by contact case. Cisneros filed a motion for new trial, which was denied by the trial court. This appeal followed.

## ANALYSIS

In five issues, which we have renumbered, Cisneros argues: (1) the evidence was insufficient to support three of the aggravated sexual assault convictions; (2) the verdict contains a fatal variance; (3) the trial court erred by refusing his request for a lesser included offense; (4) the trial court erred in denying his motion for new trial; and (5) the judgments requires reformation. The State cross-appealed and asked for additional reformations to the judgments

## I.     Sufficiency of the Evidence

In his first issue, Cisneros alleges the evidence was insufficient to support three of the five aggravated sexual assault convictions.

We review a sufficiency challenge by considering all of the evidence in the light most favorable to the verdict and determine, whether, based on the evidence and reasonable inferences therefrom, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See*

–7–

*Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The fact finder can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liabilities, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements "as modified by the indictment." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). A hypothetically correct jury charge for aggravated sexual assault of a child requires the State to prove Cisneros:

> Intentionally or knowingly caused the penetration of the anus or sexual organ of a child by any means, and at the time of the offense, the child was younger than 14 years of age.

Regarding what amounts to penetration, the court of criminal appeals explained "[w]ords not specifically defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015). Applying that concept to the terms in the aggravated sexual assault statute, the court stated "'penetrate' may mean 'to enter into' or 'to pass through.'" *Vernon v. State*, 841 S.W.2d 407, 409–10 (Tex. Crim. App. 1992) (quoting *Webster's Third New International Dictionary,* p. 1670 (Merriam–Webster 1981)). It continued,

> Thus, in common parlance, mere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips. For this reason, we think that the phrase "penetration of the . . . female sexual organ" is fairly susceptible of an understanding which includes the kind of touching proven in this case.

*Id.* at 409–10; *see Green*, 476 S.W.3d at 447.

Cisneros argues the State did not prove each distinct offense of aggravated sexual assault, JJ2 never testified as to penetration, and the evidence did not support there were three assaults against JJ1. However, JJ2 stated Cisneros touched the sides

of her vagina, her clitoris, and would "play with her holes" and JJ1 testified there was at least three assaults in the garage closet, another in B.R.'s bedroom, and once in the van going to Home Depot.

During JJ2's testimony, she described multiple incidents of penetration. She stated the incidents happened in the living room, the garage, and garage closet. Even though JJ2 believed Cisneros did not "go into her holes," she testified he touched her vagina with his hands and would touch the sides, clitoris, and play with "her holes." Even though JJ2 did not believe Cisneros "penetrated" her, Dr. Reeder explained based on JJ2's anatomy, it was unlikely JJ2's clitoris could be touched without breaking the plane of her labia majora, which amounted to penetration. Therefore, the jury could believe penetration occurred in each location JJ2 described, and the evidence was sufficient to support the three convictions for aggravated sexual assault for JJ2.

JJ1 stated Cisneros penetrated her with his fingers and "went into her hole." That testimony alone supports a finding of penetration. JJ1 remembered at least three incidents in the garage closet, another incident in B.R.'s bedroom, and one incident in B.R.'s van as they went to Home Depot. The jury could have found JJ1's testimony regarding multiple incidents sufficient to support the three convictions for aggravated sexual assault of JJ1. Based on the evidence presented, there was sufficient evidence to support the jury's verdicts. We overrule Cisneros's first issue.

## II.  Variance

In his second issue, Cisneros argues the verdict contained a fatal variance because both complainants were initially given the same pseudonym. He claims because the pseudonyms were identical, there was no way to distinguish which indictment applied to which complainant. We disagree.

A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). With respect to variances between allegations in the indictment and the State's proof at trial, the court of criminal appeals has declared only material variances will affect the hypothetically correct jury charge. *Hernandez v. State*, 556 S.W.3d 308, 313 (Tex. Crim. App. 2017). A variance will be considered material if the variance prejudices the defendant's "substantial rights." *Id.*; *see also Gollihar*, 46 S.W.3d at 248 ([A] variance that is not prejudicial to a defendant's 'substantial rights' is immaterial."). In determining whether a variance is material, we determine whether the indictment informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial and whether the prosecution under the indictment as drawn would subject the defendant to the risk of being prosecuted later for the same crime. *Gollihar*, 46 S.W.3d at 257 (citing *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). In cases where a pseudonym is used to protect the victim's identity, the fatal variance doctrine is inapplicable to pseudonym cases so long as the defendant's due process right to

–11–

notice is satisfied. *Stevens v. State*, 891 S.W.2d 649, 651 (Tex. Crim. App. 1995) (en banc).

Here, Cisneros claims he "had no ability to know which victim was alleged in which indictment and no way to defend against the indictments during trial" because the State gave the twins identical pseudonyms in the indictments and tried the cases together. The State responds Cisneros received pre-trial discovery which included offense reports and arrest warrant affidavits which identified each complainant by name. The State claims Cisneros did not raise any pre-trial complaint regarding lack of notice and did not complain of surprise at any time. Prior to the start of trial, there was an outcry hearing where the complainants were discussed by name. During trial, each complainant testified by using their names, not pseudonyms, and they were identified by name throughout the trial. The trial court clarified which indictment applied to which complainant and distinguished them accordingly. The court then explained to the jury which adjusted pseudonym applied to which complainant. Cisneros did not raise a complaint, objection, or show surprise at any point and could not claim surprise based on the information before us. There was no material variance between the indictment and proof at trial. We overrule Cisneros's second issue.

## III. Lesser Included Offense

In his third issue, Cisneros alleges the trial court erred by not refusing his request for a lesser-included offense of indecency with a child by contact on the

charges related to JJ1. Cisneros requested the lesser included offense for both complainants but the trial court only allowed it on the charges related to JJ2.

We apply a two-part test to determine if a trial court is required to give a requested instruction on a lesser-included offense. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016) (referencing two-part test adopted in *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007)). The first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is determined as a matter of law. *Hall*, 225 S.W.3d at 535–36. Under this first step of the test, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. art. 37.09. In this case, the first step is established because, as a matter of law, indecency with a child by contact could be a lesser-included offense of aggravated sexual assault of a child depending on the predicate act alleged.

The second step in the analysis asks whether there is evidence in the record that supports giving the instruction to the jury. *Bullock*, 509 S.W.3d at 924–25. Under this second step, a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record to permit a jury to rationally find, if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.*; *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). The evidence must establish

the lesser-included offense is a valid, rational alternative to the charged offense. *Rice*, 333 S.W.3d at 145.

The second step requires examining all the evidence admitted at trial, not just the evidence presented by the defendant. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). Anything more than a scintilla of evidence is adequate to entitle a defendant to a lesser charge. *Sweed*, 351 S.W.3d at 68. Although the threshold showing is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on the lesser-included is warranted. *Id.*

In considering whether a lesser offense is a valid, rational alternative to the charged offense, we must compare the statutory requirements between the greater offense and the lesser offense to determine whether the evidence exists to support a conviction for indecency by contact but not aggravated sexual assault. *Id.* A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means, and the child is younger than fourteen years of age. TEX. PENAL CODE § 22.021. A person commits an offense of indecency with a child by contact when the defendant, with the intent to arouse or gratify his sexual desire, engages in sexual contact with the victim, a child younger than seventeen years of age. *Id.* § 21.11. "Sexual contact" is defined as "any touching by a person, including touching through clothing, of the

–14–

anus, breast, or any part of the genitals of a child" if "committed with the intent to arouse or gratify the sexual desire of any person." *Id*.(c)(1).

In order to be entitled to the lesser-included offense instruction, Cisneros could only be guilty of indecency by contact. Based on the evidence presented, there was no indication Cisneros only touched and did not penetrate JJ1. On the contrary, JJ1 testified there were at least three incidents involving digital penetration: in the garage closet, in B.R.'s bedroom, and in B.R.'s van. JJ1's testimony by itself is enough to establish the elements of aggravated sexual assault of a child. *See* TEX. PENAL CODE § 22.021. There was no evidence JJ1 waivered in what occurred or stated only touching occurred. Although JJ1 stated some of the instances of abuse Cisneros began by touching her over the clothes or on her body, she also testified Cisneros always penetrated her with his fingers.

Because there was no evidence to show the lesser-included offense was the only possible offense the jury could convict Cisneros of, the trial court did not err in denying his request for the lesser-included offense instruction in the cases involving JJ1. We overrule Cisneros's third issue.

## IV. Motion for New Trial

In his fourth issue, Cisneros asserts the trial court erred by overruling his motion for new trial. He states the trial court judge who signed the denial did not preside over the trial and heard no evidence from the case. Cisneros claims the trial

–15–

court abused its discretion in determining there was sufficient evidence to support the conviction.

An appellate court reviews a trial court's denial of a motion for new trial under an abuse of discretion standard. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). The reviewing court cannot substitute its judgment for that of the trial court; rather, the Court must decide whether the trial court's decision was arbitrary or unreasonable. *Id*. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id*. A trial court's ruling will be upheld if it is correct on any applicable legal theory, even if the trial court articulated an invalid basis. *State v. Herndon*, 215 S.W.3d 901, 905 n.4 (Tex. Crim. App. 2007) ("This is the 'right ruling, wrong reason' doctrine."); *Martinez v. State*, 74 S.W.3d 19, 21 (Tex. Crim. App. 2002) (noting the trial court's decision on a motion for new trial may be sustained on appeal if it is correct based upon "any applicable theory of law.").

A motion for new trial alleging the verdict is contrary to the law and evidence has been interpreted as only raising a challenge to the legal sufficiency of the evidence to support the conviction. *State v. Zalman*, 400 S.W.3d 590, 594 (Tex. Crim. App. 2013). A motion for new trial challenging the legal sufficiency of the evidence presents a legal rather than a factual question, and the trial court must apply the same legal test appellate courts use when reviewing challenges to the sufficiency of the evidence on appeal. *See State v. Medina*, 536 S.W.3d 528, 532 (Tex. App.—

San Antonio 2017, pet. ref'd). If the essential elements of the offense could be found beyond a reasonable doubt, then the trial court did not abuse its discretion in denying the motion for new trial. *State v, Fuller*, 480 S.W.3d 812, 819–20 (Tex. App.—Texarkana 2015, pet. ref'd). Such a claim is determinable from the record. *Waller v. State*, 931 S.W.2d 640, 644 (Tex. App.—Dallas 1996, no pet.).

Cisneros filed a form motion for new trial alleging the "verdict was contrary to the law and evidence." The motion was denied by Judge Jeanine Howard, the presiding judge of Criminal District Court Number 6, who did not preside over Cisneros's trial. The trial was presided over by Judge Rick Magnis, sitting by assignment. However, Cisneros's legal sufficiency claim could be determined from the record, even if Judge Howard did not preside over the trial. Because we previously determined the evidence was legally sufficient to support all of the aggravated sexual assault convictions, and JJ2's testimony provides support for the indecency with a child by contact conviction, there was no abuse of discretion in the denial of the motion for new trial. We overrule Cisneros's fourth issue.

## V.    Modification of the Judgments

In his fifth issue, Cisneros contends the judgment for his indecency with a child by contact conviction is void because it lists a punishment which exceeds the statutory maximum for this charge. The State cross-appeals and asks this Court to make the following additional modifications to the judgments: correct the name of the State's attorney from "Katherine Mitchell" to "Emily Antram" on all six

–17–

judgments; in cause number 05-22-00407-CR, correct the penal code statute to reflect section 22.021(a)(2)(B) instead of section 22.021(a)(20(B); and in cause numbers 05-22-00407-CR and 05-22-00408-CR, correct the judgments to reflect Cisneros's correct sentence of ninety-nine years' imprisonment, instead of twenty years' imprisonment as listed.

We have the power to modify a judgment when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). When there is a conflict between the oral pronouncement of a sentence and the written judgment, the oral pronouncement controls, and the remedy is to reform the judgment. *Shuler v. State*, 650 S.W.3d 683, 686 (Tex. App.—Dallas 2022, no pet.) (citing *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)); *see Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003).

Here, we overrule Cisneros's request to void his judgment in cause number 05-22-00411-CR because the trial record reflected the proper sentence was assessed. We do modify the judgment in cause number 05-22-00411-CR to properly reflect his sentence of twenty years' imprisonment. We sustain the State's cross-appeal issues and modify the judgments as follows: correct the name of the State's attorney from Katherine Mitchell to Emily Antram on all six judgments; correct the sentence on cause numbers 05-22-00407-CR and 05-22-00408-CR to reflect Cisneros's

–18–

sentence of ninety-nine years, instead of twenty years; and correct the penal code section in cause number 05-22-00407-CR to reflect section 22.021(a)(2)(B). On our own review of the record, we also find the judgment in cause number 05-22-00409-CR reflects an incorrect offense date and modify the judgment to read the date of June 10, 2013, as alleged in the indictment.

## CONCLUSION

Based on the record before us, we overrule Cisneros's five issues, we sustain the State's cross-appeal, and modify the judgments accordingly. We affirm as modified.

220406f.u05
220407f.u05
220408f.u05
220409f.u05
220410f.u05
220411f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b).

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SALVADOR VAZQUEZ
CISNEROS, Appellant

No. 05-22-00406-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1312685-X.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

Change the State's attorney from "Katherine Mitchell 24093769" to
"Emily Antram 24086087"

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of August 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SALVADOR VAZQUEZ CISNEROS, Appellant

No. 05-22-00407-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas Trial Court Cause No. F-1312681-X. Opinion delivered by Justice Partida-Kipness. Justices Reichek and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Change the State's attorney from "Katherine Mitchell 24093769" to "Emily Antram 24086087"; change offense section from "22.021(a)(20(B) Penal Code" to "22.021(a)(2)(B) Penal Code"'; change sentence from 20 years confinement to 99 years confinement

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of August 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SALVADOR VAZQUEZ CISNEROS, Appellant

No. 05-22-00408-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas Trial Court Cause No. F-1312684-X. Opinion delivered by Justice Partida-Kipness. Justices Reichek and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Change the State's attorney from "Katherine Mitchell 24093769" to "Emily Antram 24086087"; change sentence from 20 years confinement to 99 years confinement

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 4th day of August 2023.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SALVADOR VAZQUEZ
CISNEROS, Appellant

No. 05-22-00409-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1312686-X.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

Change the State's attorney from "Katherine Mitchell 24093769" to
"Emily Antram 24086087"; change date of offense to reflect "June 10,
2013"

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of August 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SALVADOR VAZQUEZ
CISNEROS, Appellant

No. 05-22-00410-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1312682-X.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

Change the State's attorney from "Katherine Mitchell 24093769" to
"Emily Antram 24086087"

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of August 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SALVADOR VAZQUEZ
CISNEROS, Appellant

No. 05-22-00411-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1312687-X.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Change his sentence from 99 years imprisonment to 20 years imprisonment; change the State's attorney from "Katherine Mitchell 24093769" to "Emily Antram 24086087"

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of August 2023.